IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 3:23cr133-5**

**CORINA CHAVEZ,**

**Defendant.**

# MEMORANDUM OPINION

This matter comes before the Court on Defendant Corina Chavez's Motion for Compassionate Release. (ECF No. 212). The United States responded in opposition, (ECF No. 244), and Ms. Chavez replied, (ECF No 245).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion for Compassionate Release.

## I. Background

On October 17, 2023, a grand jury returned a five-count indictment charging Ms. Chavez with one count conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count One). (ECF No. 3, at 1–10; ECF No. 4, at 5.) On January 19, 2024, Ms. Chavez waived her right to prosecution by indictment, consented to prosecution by information, and entered a plea agreement. (ECF Nos. 123, 124.)

Prior to Ms. Chavez's sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). (ECF No. 168.) The PSR reported a Total Offense Level of 27 and

a criminal history category of I, resulting in an advisory guideline range of 70 to 87 months of incarceration.[1] (ECF No. 168 ¶¶ 66, 67.)

On June 28, 2024, the Court sentenced Ms. Chavez to a term of seventy-months imprisonment. (ECF No. 191.)

On March 17, 2025, Ms. Chavez filed a *pro se* Motion for Compassionate Release. (ECF No. 212.) On July 29, 2026, the Court appointed Ms. Chavez counsel. (ECF No. 233.) On August 31, 2026, Ms. Chavez filed a counseled Supplemental Memorandum in Support of her Motion for Compassionate Release. (ECF No. 236.) On September 24, 2026, the United States responded in opposition. (ECF No. 244.) On September 25, 2026, Ms. Chavez replied. (ECF No. 245.)

On September 9, 2026, the United States Probation Office filed a Worksheet in Response to Ms. Chavez's Compassionate Release Request. (ECF No. 238.) Ms. Chavez's current release date is July 19, 2027.[2]

---

[1] The Probation Office reported that Ms. Chavez has demonstrated acceptance of responsibility for the offense. (ECF No. 168 ¶ 26.) Accordingly, the total offense level decreased by two levels to 27. U.S.S.G. § 3E1.1(a).

[2] *See* Fed. Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Sep. 29, 2026). Ms. Chavez's worksheet states that her projected release date is July 7, 2026. (ECF No. 238, at 1.) This difference is not relevant to the Court's analysis, because Ms. Chavez remains incarcerated.

BOP records reflect that Ms. Chavez is eligible for release under home confinement beginning on October 20, 2026. (ECF No. 238, at 2.) In the United States' Motion for Extension, the United States argues that Ms. Chavez's Motion for Compassionate Release will likely become moot when she becomes eligible for home confinement on October 20, 2026. (ECF No. 241, at 1–2.)

Claims for compassionate release are mooted once a defendant is released from BOP custody. *United States v. Davis*, 177 F. 4th 549, 551 (4th Cir. 2026). Even upon transfer to home confinement, a defendant is still in BOP custody, therefore district courts may still exercise discretion to grant motions for compassionate relief after a defendant is transferred to home

## II. Standard of Review

18 U.S.C. § 3582(c)(1)(A) authorizes a defendant to, after exhausting their administrative remedies with the Bureau of Prisons ("BOP"), move a court for compassionate release. A court considering a motion for compassionate release proceeds in two steps. First, the court "determines whether the defendant is eligible for a sentence reduction." *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024). To be eligible, the court must find that relief is warranted because of "extraordinary compelling reasons," and that such relief is "consistent with applicable policy statements" issued by the United States Sentencing Commission (the "Sentencing Commission"). 18 U.S.C. § 3582(c)(1)(A)(i); *Moody*, 115 F.4th at 310. The Sentencing Commission's policy statement identifies six categories of extraordinary and compelling reasons that may allow for a sentence reduction. *See* U.S.S.G. § 1B1.13(b).[3]

Second, if the court finds that extraordinary and compelling reasons exist, the "court considers whether the 18 U.S.C. § 3553(a) sentencing factors support relief." *Moody*, 115 F.4th at 310.

confinement. *See United States v. Smith*, No. 23-6472, 2024 WL 1596672, at *2 (4th Cir. Apr. 12, 2024) (citing *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021)); *United States v. Hibbert*, No. 23-6270, 2023 WL 8946817, at *1 (4th Cir. Dec. 28, 2023). Therefore, Ms. Chavez's claim for compassionate release will not become moot upon her eligibility for home confinement on October 20, 2026 or upon any potential transfer from her facility to home confinement.

[3] Such circumstances include: (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated; (2) the defendant's age; (3) the defendant's family circumstances; (4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer; (5) "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)"; and, (6) the defendant's receipt of an "unusually long sentence." U.S.S.G. § 1B1.13(b)(1)–(6).

## III. Analysis

Ms. Chavez argues that she is entitled to compassionate release because of her family circumstances. (ECF No. 236, at 1.) Ms. Chavez contends that (1) her mother, Juana Espinoza Barrera is incapacitated and unable to serve as primary caregiver to Ms. Chavez's two minor children, (2) Ms. Chavez is the only available caregiver to her incapacitated mother, and (3) the § 3553(a) sentencing factors support Ms. Chavez's release; therefore, she must be released under U.S.S.G. §§ 1B1.13(b)(3)(A),(C). (ECF No. 212, at 4, 7–8; ECF No. 236, at 3–8.)

The United States opposes Ms. Chavez's Motion for Compassionate Release, contending that Ms. Chavez has not carried her burden to establish that her mother is "incapacitated" for purposes of U.S.S.G. § 1B1.13(b)(3) and that alternative caregivers are available for Ms. Chavez's children and for Ms. Chavez's mother. (ECF No. 244, at 1, 6–11.) And that even if Ms. Chavez could make that showing, the § 3553(a) factors weigh against her release. (ECF No. 244, at 1, 11–12.)

For the reasons articulated below, the Court will deny the Motion for Compassionate Release. The Court concludes that Ms. Chavez exhausted her exhaustion requirement, but that Ms. Chavez's mother is not "incapacitated" for purposes of U.S.S.G. § 1B1.13(b)(3), and that alternative caregivers are available for Ms. Chavez's children and for Ms. Chavez's mother. Accordingly, Ms. Chavez does not offer any extraordinary and compelling reasons to support her request for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Even if she had done so, the § 3553(a) factors weigh against his release.

### A. Ms. Chavez has Exhausted her Administrative Remedies

A defendant seeking compassionate release ordinarily must first apply to the BOP to bring a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). After seeking relief from the BOP, a defendant can proceed to district court if he or she exhausts their administrative remedies

for relief with the BOP, or if the BOP fails to act within 30 days of the defendant's requesting such relief. *Id.*; *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022).

The United States does not contend that Ms. Chavez failed to exhaust her administrative remedies before her motion for compassionate release. Instead, the United States responds on the merits. (ECF No. 244.) Because the United States declined to press the requirement, the Cout deems any exhaustion defense waived.[4]

The Court therefore proceeds to the merits. *See* 18 U.S.C. § 3582(c)(1)(A); *Muhammad*, 16 F.4th at 130.

### B. The Motion Does Not Establish Extraordinary and Compelling Reasons for Ms. Chavez's Release

Ms. Chavez first moves for compassionate release under U.S.S.G. § 1B1.13(b)(3)(A), which provides that the death or incapacitation of the caregiver of a defendant's minor child constitutes an extraordinary and compelling reason to grant compassionate release. (ECF No. 236, at 3–4 (citing U.S.S.G. § 1B1.13(b)(3)(A).)

Second, Ms. Chavez moves for compassionate release under U.S.S.G. § 1B1.13(b)(3)(C), which provides that family circumstances of the defendant may constitute an extraordinary or compelling reason to grant compassionate release where the defendant establishes that the defendant's parent is incapacitated and the defendant would be the only available caregiver for

[4] On January 13, 2025, Ms. Chavez submitted a request for compassionate release to the warden of her institution. (ECF No. 238, at 2.) Ms. Chavez filed the instant Motion for Compassionate Release more than thirty days later, on March 17, 2025. (ECF No. 212; ECF No. 236, at 3.) Therefore, the exhaustion requirement is clearly satisfied. 18 U.S.C. § 3582(c)(1)(A).

On June 9, 2025, the warden of Ms. Chavez's facility denied her request for compassionate release. (ECF No. 238, at 2.)

the parent. (ECF No. 236, at 4–5 (citing U.S.S.G. § 1B1.13(b)(3)(C).) Ms. Chavez does not establish either of those circumstances.

**1. Ms. Chavez's Mother's Medical Conditions Do Not Render Her Mother Incapacitated and Therefore Unable to Care for Ms. Chavez's Children and Therefore are Not an Extraordinary and Compelling Reason for Release**

Under U.S.S.G. § 1B1.13(b)(3)(A),[5] Ms. Chavez contends that her mother's numerous medical conditions—obesity, unmanaged diabetes, glaucoma in both eyes, thyroid problems, high blood pressure, severe migraines, asthma, a chronic cough, acid reflux, insomnia, constant fatigue, fatty liver disease, a renal artery aneurysm, arthritis, carpel tunnel, sciatic nerve, bipolar disorder, depression, and generalized anxiety disorder—render her mother incapacitated and unable to care for Ms. Chavez's minor children. (ECF No. 212, at 7; ECF No. 236-1, at 1; *see* ECF No. 236-3.) Ms. Espinoza Barrera explains that symptoms from her medical conditions "can occur spontaneously and make it difficult for [her] to safely and consistently care for [her] grandchildren . . . [and] [t]he unpredictability of these episodes also causes [her] to worry. (ECF No. 236-1, at 1–2.)

While the Court sympathizes with Ms. Espinoza Barrera's health challenges, Ms. Chavez, who bears the burden, does not show that her mother is incapacitated under U.S.S.G. § 1B1.13(b)(3)(A). "The Sentencing Guidelines do not define 'incapacitation,' but courts have

---

[5] U.S.S.G. § 1B1.13(b)(3)(A) provides in full:

(3) Family Circumstances of the Defendant.—

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

U.S.S.G. § 1B1.13(b)(3)(A).

generally understood the term to require severe impairment of an individual's ability to perform the essential requirements of caring for a minor child."[6] *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2025) (quotation omitted). Generally, "[w]here a caregiver is *struggling* to care for a child, but not incapacitated, courts have denied compassionate release." *Rosario-Cruzado*, 2025 WL 1540932, at *2 (citing *United States v. Lottier*, No. 7:16-cr-30, 2022 WL 1522220, at *3 (W.D. Va. May 13, 2022) (quotations omitted)).

In her affidavit, Ms. Espinoza Barrera explains that "[t]here are times when [she] struggle[s] to drive [Ms. Chavez's children] places, prepare meals, supervise [Ms. Chavez's children] . . . because [she] may feel weak, dizzy, confused, or unable to stand or walk for extended periods." (ECF No. 236-1, at 2.) Ms. Espinoza Barrera further states that having Ms. Chavez home would "relieve the increasing physical burden on [her] and allow [her] to focus more appropriately on managing [her] own serious health problems." (ECF No. 236-1, at 3.)

It is clear to the Court that Ms. Espinoza Barrera is *struggling* to care for Ms. Chavez's children and manage her declining health. Unfortunately, the challenges Ms. Espinoza Barrera is experiencing do not qualify her as *presently* "incapacitated" and unable to provide essential care to Ms. Chavez's children under the definitions set forth above.

Therefore, the Court finds that Ms. Chavez has failed to show that her children's caregiver, her mother, is incapacitated, as defined under the law.

---

[6] District courts may also "look[] to BOP Program Statement 5050.50 for guidance," which defines "'incapacitation,' in relevant part, as 'a serious injury, or a debilitating physical illness,' which renders a caregiver 'completely disabled.'" *United States v. Lynch*, No. 4:20-cr-53, 2025 WL 1947790, at *3 (E.D.N.C. July 15, 2025) (collecting cases) (quoting BOP Program Statement 5050.50, at 10).

**2. Ms. Chavez's Mother's Medical Conditions Do Not Render Her Mother <u>Incapacitated and Ms. Chavez is not her Mother's Only Available Caregiver</u>**

Under U.S.S.G. § 1B1.13(b)(3)(C),[7] Ms. Chavez identifies herself as "*the* available caregiver" to her mother, Ms. Espinoza Barrera. Before Ms. Chavez's incarceration, Ms. Chavez assisted Ms. Espinoza Barrera by taking her to medical appointments and assisting with other matters related to Ms. Espinoza Barrera's health. (ECF No. 236-1, at 3.) Ms. Chavez argues that Ms. Espinoza Barrera's medical problems have worsened during Ms. Chavez's incarceration and due to Ms. Espinoza Barrera's declining health, Ms. Chavez's assistance has become more—not less—important. (ECF No. 236, at 5 (emphasis added).)

Ms. Chavez, who bears the burden, does not show that her mother is incapacitated under U.S.S.G. § 1B1.13(b)(3)(C) either. Section 1B1.13(b)(3)(C) does not define "incapacitation." In *Rosario-Cruzado*, the United States Court of Appeals for the Fourth Circuit suggests that district courts look to state law to help define "incapacitation" under § 1B1.13(b ). *Rosario-Cruzado*, 2025 WL 1540932 at *2. Virginia law defines an "[i]ncapacitated person" as "an adult who . . . [is] incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that . . . [they cannot] meet the essential requirements for [their] health, care, safety, or therapeutic needs." Va. Code Ann. § 64.2-2000.

---

[7] U.S.S.G. § 1B1.13(b)(3)(C) provides in full:

(3) Family Circumstances of the Defendant.—

> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(C).

No aspect of briefing proffered by Ms. Chavez indicates that Ms. Chavez's mother is incapacitated for the purposes of § 1B1.13(b)(3)(C). Although Ms. Chavez's mother is presently experiencing health challenges, it appears to the Court that Ms. Espinoza Barrera is capable of receiving and evaluating information, responding to her environment, and meeting her essential needs. (*See* ECF No, 236-1, at 1–3.) Therefore, Ms. Chavez has failed to show that her mother is incapacitated for the purposes of § 1B1.13(b)(3)(C).

Ms. Chavez also fails to show that, even were the Court to release her, she would be the *only* available caregiver to Ms. Espinoza Barrera, as § 1B1.13(b)(3)(C) requires. This Court and "others in the Eastern District of Virginia [ ] have consistently held that the failing health of a defendant's family member . . . does not establish an extraordinary and compelling reason for a defendant's release when other caregivers are available." *United States v. Taylor*, No. 3:08-cr-326 (MHL), 2026 WL 313469, at *8 (E.D. Va. Feb. 5, 2026) (collecting cases). Ms. Chavez identifies herself as "*the* available caregiver," (ECF No. 236, at 5 (emphasis added)), but not the *only* available caregiver. And as the United States identifies, Ms. Chavez fails to explain why her father, her two sisters, or her 18-year-old child are not available to care for Ms. Espinoza Barrera. (ECF No. 244, at 10–11.) In the briefing, Ms. Chavez narrowly explains why Ms. Chavez's adult relatives are not available to "assume primary responsibility for two active children." Even in her Reply, Ms. Chavez fails to squarely address why her adult relatives would not be available alternative caregivers to Ms. Espinoza Barrera. (ECF No. 245, at 3–4.) Therefore, the Court finds that Ms. Chavez has failed to show that her mother is incapacitated and she is her mother's only available caregiver.

### C. <u>The § 3553(a) Factors Do Not Support Compassionate Release</u>

Even if Ms. Chavez were to establish an extraordinary and compelling reason for her release, the § 3553(a) factors weigh against it. In the interest of creating a full record, the Court discusses those factors here.

The § 3553(a) factors include: the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence to: reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment, § 3553(a)(2)(A)–(D); the kinds of sentences available, § 3553(a)(3), (4); any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and, the need for restitution, § 3553(a)(7).

District courts enjoy "broad discretion" in analyzing the § 3553(a) factors when considering a motion for compassionate release. *United States v. Burleigh*, 145 F.4th 541, 548 (4th Cir. 2025) (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)). "[D]istrict courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.'" *Id.* (quoting § 3582(c)(1)–(2)).

The nature and circumstances of the offense are serious: Ms. Chavez was convicted of conspiracy to possess with the intent of distribution of cocaine. (ECF No. 191.) She participated in the conspiracy for profit and had a specific role in the conspiracy. (ECF No. 231, at ¶¶ 1, 6.) The Court has weighed Ms. Chavez's history and characteristics. After "dropp[ing] out [of high school] in the 9th grade when she was pregnant," Ms. Chavez earned her GED and has a strong employment history as a technician. (ECF No. 231 ¶¶ 55, 63.) Ms. Chavez's former co-workers

described her "as a great technician, friend, and mother." (ECF No. 231 ¶¶ 63.) Ms. Chavez also reported a history of drug use. (ECF No. ECF No. 231 ¶ 54.) BOP records show that Ms. Chavez is currently enrolled in the 500-hour residential drug treatment program and is on the waitlist for several classes. (ECF No. 238, at 2.) While incarcerated, Ms. Chavez has completed 10 educational courses, including a 213-hour masonry vocational training program. (ECF No. 238, at 2.) Ms. Chavez has demonstrated commendable resilience. These considerations, however, are offset by the need to promote respect for the law and the fact that Ms. Chavez received a benefit at sentencing: the Court imposed a seventy-month sentence, a sentence at the low end of the guideline range. (ECF No. 191; ECF No. 231 ¶67.) The need for the sentence to promote respect for the law, and to afford adequate deterrence weighs heavily against a sentence reduction of any kind. 18 U.S.C. §§ 3553(a)(1), (a)(2).

## IV. Conclusion

For the reasons articulated above, the Court will deny the Motion for Compassionate Release.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 10/2/2026
Richmond, Virginia